```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ANTHONY WILLIAMS,                                                :
                                                                 :
                              Plaintiff,                         :
                                                                 :        21-cv-0054 (LJL)
            -v-                                                  :
                                                                 :        OPINION AND ORDER
J. NOETH,                                                        :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/25/2022

LEWIS J. LIMAN, United States District Judge:

Respondent J. Noeth ("Respondent") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss as untimely the application of petitioner Anthony Williams ("Williams") under 28 U.S.C. § 2254 for a writ of habeas corpus. Dkt. No. 26.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

The Court accepts "all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). It also construes the submissions of the pro se petitioner liberally "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). However, "dismissal of a pro se complaint is [] appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)). Thus, the Court's "duty to liberally

construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted) (quoting *Moore's Federal Practice*).

The Court also considers arguments and facts raised by the pro se petitioner "in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Brooks v. Jackson*, 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("[B]ecause a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint.").

I.      **Williams' State-Court Convictions**

On June 14, 2013, Williams was convicted in New York Supreme Court, Bronx County on charges of first-degree criminal contempt, second-degree falsely reporting an incident, second-degree burglary, second-degree criminal contempt, third-degree assault, and forcible touching.  Dkt. No. 1 ("Pet.") ¶¶ 1, 5; Dkt. No. 26. ("Watson Decl.") ¶ 5.  On September 17, 2013, the court sentenced Williams to an aggregate minimum term of seventeen-and-one-sixth years of imprisonment and five years of post-release supervision.  Pet. ¶ 3; Watson Decl. ¶ 5.

On February 21, 2019, Williams' conviction was affirmed by the New York Supreme Court Appellate Division, First Department. *People v. Williams*, 169 A.D.3d 567 (1st Dep't Feb. 21, 2019).  By letter dated February 25, 2019, Williams applied for leave to appeal to the New York State Court of Appeals.  Watson Decl. ¶ 10.  On June 14, 2019, the New York Court of Appeals denied Williams' application for leave to appeal. *People v. Williams*, 33 N.Y.3d 1075

(2019).  Williams did not subsequently petition for a writ of certiorari with the United States Supreme Court or file a New York Criminal Procedure Law § 440.10 motion to vacate his judgment on the basis of facts outside the record.  Pet. ¶¶ 10, 15; Watson Decl. ¶¶ 11, 12.

## II.     Williams' Federal Habeas Corpus Petition

### A.     Grounds for the Petition

Williams filed his petition on December 18, 2020 by placing it in the prison mail collection box at Attica Correctional Facility, where he was incarcerated.  Watson Decl. ¶ 15.  The petition is submitted on a AO 241 Form provided by the Administrative Office of the United States Courts and lists three grounds for relief.  The information provided was entirely based on information in Williams' possession at the time his conviction became final and the petition does not cite any cases.  Dkt. No. 1.

Williams' application challenges his 2013 conviction on the following three grounds: (1) he received ineffective assistance of counsel from his trial and appellate counsel; (2) the convictions were impermissibly based solely on circumstantial evidence; and (3) the judge commented inappropriately on his case.  Pet. ¶ 12.  On his claim of ineffective counsel, Williams alleges among other things that his attorney waived his rights to appear before a grand jury, "silenced" him, never got a fingerprint expert, did not give to the court two letters he received from the complainant, and advised him not to plead guilty, not to testify and to stay silent at sentencing.  On his circumstantial evidence claim, Williams argues that "evidence was withheld by ADA" and that the complainant's testimony was "held into question."  *Id.*  The third ground for habeas relief states that, during the state-court proceedings, the judge inappropriately commented on the complainant's refusal to see Williams and the certainty of his guilty conviction.  *Id.*

A declaration subsequently filed on June 1, 2021 asserts two additional grounds for habeas relief: (4) Williams' sentence imposed was unduly harsh; and (5) the burglary and forcible touching convictions were against the weight of the evidence. Dkt. No. 12. Specifically, Williams argues that the sentence was unduly harsh for a first-time felon who was twenty-three years old during the alleged crime. *Id*. The declaration further states that, in light of inconsistent testimony and insufficient evidence, the state-court prosecutor failed to prove Williams' guilt beyond a reasonable doubt. *Id*.

B.   **Issue of Timeliness**

Williams placed his petition in the prison mail collection box on a date that was more than one year after the September 2019 date when his conviction became final. On January 6, 2021, the Court directed Williams to file a declaration showing why his petition should not be dismissed as untimely. Dkt. No. 6. The order to show cause was sent to Marcy Correctional Facility. *Id*. On January 22, 2021, the order was returned to the Court with a notation from the correctional facility that Williams had been released from custody and had not filed any explanation for the untimeliness of his petition. Dkt. No. 8. Accordingly, on April 15, 2021, the Court dismissed the petition without prejudice. *Id*.

In a letter dated May 1, 2021, Williams stated that he had never received the order to show cause because he was incarcerated at Attica Correctional Facility, not Marcy Correctional Facility. Dkt. No. 10. In addition, Williams explained that he did not receive the order dismissing his petition until April 23, 2021 because he had been placed on suicide watch and barred from the law library. *Id*. Williams also appended a copy of a letter dated February 23, 2021, which alleged that he was "blackballed from Law Library" when "the superintendent [saw] name on [his] paper work dealing with the court's." *Id*. In a letter dated May 14, 2021, Williams reiterated that he had never been incarcerated at Marcy Correctional Facility or

released from custody and requested the Court to reopen his case and assign him counsel to assist with this petition. Dkt. No. 11.

On June 1, 2021, the Court vacated the order of dismissal and reopened the petition. In response, on June 4, 2021, Williams submitted a declaration asserting that his attorney failed to inform him about his options for filing a motion in the trial court under New York Criminal Procedure Law § 440.10 or seeking habeas relief in federal court. Dkt. No. 14.[1] On June 17, 2021, Williams submitted a subsequent declaration, where he asserted that he was unable to file a timely petition because "[t]he department of correction throughout the state of new york ordered a shut down with a very limited [schedule] that was mostly cancelled" and he was "unable to attend the law library in five point-Attica correctional facility." Dkt. No. 18.[2]

On October 1, 2021, Williams wrote to the Court that "[I'm] in here still fighting for my liberty, my life against covid-19 gang's and other's I've been [stabbed] in the neck and other [places]." Dkt. No. 25.

On October 25, 2021, Respondent moved to dismiss the instant habeas corpus petition as time-barred under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).[3] Dkt. No. 26. In a letter dated May 9, 2022, Williams responded that "I am rushing due to the calculated

---

[1] The allegation is consistent with that in Williams' petition where he stated that he was told by counsel that the New York Court of Appeals was the "last court" available to review his conviction and that his lawyer had a conflict of interest. Pet. ¶ 13.

[2] On June 24, 2021, Williams applied to the Court to request a pro bono attorney, stating that he had contacted "over ten law firms" and "the legal aid," but only received a response from two regarding down payment requirements. Dkt. No. 19. Williams additionally wrote that he "did not want" representation by the Legal Aid Society because "it would be a conflict of interest" in light of the inadequate counsel claims raised in his petition. *Id.* On June 25, 2021, the Court denied Williams' request for appointment of counsel without prejudice, finding that he failed to make a showing that his claim "seems likely to be of substance." Dkt. No. 20.

[3] Section 2244(d)(1) provides in relevant part: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

5

retaliation of An ongoing investigation of assaults by staff on me For grievances, and issue with gangs im having That I been having since 2012." Dkt. No. 28.  In a letter dated May 18, 2022, Williams reiterated his difficulty understanding the law and stated that he was "being assaulted for talking up for myself" and experienced "racism gang's All kind of oppression tactics."  Dkt. No. 31.  Finally, on May 24, 2022, Williams submitted a response to the motion to dismiss.  Dkt. No. 30.  However, rather than setting forth arguments as to why the petition should not be barred as untimely, Williams reasserted the grounds for challenging his 2013 conviction first articulated in his petition.

## DISCUSSION

### I. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations for the filing of a writ of habeas corpus by a person in custody pursuant to a judgment of a State court.  28 U.S.C § 2244(d)(1); *see also Lindh v. Murphy*, 521 U.S. 320, 327 (1997) (interpreting Section 2244 to apply "to the general run of habeas cases . . . when those cases had been filed after the date of the Act").  The statute provides that the limitation period runs from the latest of four benchmarks:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

6

28 U.S.C. § 2244(d)(1).  Williams cites no removal of state-created impediment[4], recognition of a new constitutional right, or discovery of new factual predicate.  Consequentially, he must have filed his application within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" for his submission to be timely.  28 U.S.C. § 2244(d)(1)(A).

A conviction is "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the respective state's highest court and either completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a writ of certiorari, or the expiration of time to seek certiorari before the United States Supreme Court.  *See Warren v. Garvin*, 219 F.3d 111, 112 (2d Cir. 2000); *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (stating that the petitioner's conviction became final ninety days after the date of an order denying his application for leave to appeal to the New York Court of Appeals because petitioner did not file a petition for certiorari seeking review of his New York State court decisions by the United States Supreme Court).  Because Williams did not file a petition for certiorari or move to vacate his judgment after the New York Court of Appeals denied leave to appeal, his conviction consequently became final on September 14, 2019 following "the expiration of [the] 90-day period of time to petition for certiorari in the Supreme Court of the United States."  *Warren*, 219 F.3d at 112.  Thus, Williams had until September 12, 2020—one year after September 14, 2019—to submit his timely petition.

Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing.  *Houston v. Lack*, 487 U.S. 266, 270 (1988).

---

[4] The state has no obligation to provide a lawyer for petitioner on post-conviction review, *see Coleman v. Thompson*, 501 U.S. 722, 752–54 (1991), and thus the absence of counsel is not a state-created impediment.

7

Williams placed this petition in the prison mail collection box on December 18, 2020. Because the instant petition was filed more than three months after September 12, 2020, it is time-barred pursuant to 28 U.S.C. § 2244(d) except if tolling applies.

## II.     Statutory Tolling

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not counted toward the one-year limitations period. 28 U.S.C. § 2244(d)(2); *see also Smith v. McGinnis*, 208 F.3d 13, 16 (2d Cir. 2000) ("[T]he proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run."). Because Williams did not file a New York Criminal Procedure Law § 440.10 motion to vacate his judgment, he cannot avail himself of statutory tolling under Section 2244(d)(2). Pet. ¶¶ 10, 15; Watson Decl. ¶¶ 11, 12; *see also Plato v. Morrissey*, 638 F. Supp. 2d 338, 345 (W.D.N.Y. 2009) ("[N]either of [petitioner]'s CPL [section] 440.10 motions had any effect on the commencement of the limitations period because they were filed well after the limitations period had actually expired.").

## III.    Equitable Tolling

The AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must show (1) that "some extraordinary circumstance stood in his way" and prevented timely application and (2) that "he has been pursuing his rights diligently" throughout the period he seeks to toll. *Holland*, 560 U.S. at 649; *see also Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012); *Smith v. McGinnis*, 208 F.3d

8

13, 17 (2d Cir. 2000). The term "extraordinary" does not refer to the uniqueness of the petitioner's circumstances, "but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). The Second Circuit has clarified that the AEDPA limitations period may only be tolled in "rare and exceptional circumstance[s]." *Smith*, 208 F.3d at 17 (quoting *Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir. 1999)). Furthermore, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances . . . and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). In other words, there must also be some "link of causation between the extraordinary circumstances and the failure to file." *Gunn v. Aquafredda*, 2021 WL 3115488, at *5 (S.D.N.Y. July 21, 2021). "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde*, 224 F.3d at 134.

The Court analyzes William's claims for equitable tolling holistically and without reliance on "rigid and nonvariable rules." *Dillon*, 642 F.3d at 362. The question is whether "the factors to which Petitioner points . . . , individually or collectively, rise to the level necessary to excuse his failure to file his petition within the one-year limitations period." *Hines v. United States*, 2021 WL 2456679, at *3 (S.D.N.Y. June 16, 2021). "While equitable tolling is warranted only in rare and exceptional circumstances, courts do not apply its requirements mechanistically." *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011) (internal citations and quotations omitted).

In his petition, Williams argues that the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) should not bar his request for habeas relief because:

> Im doing my own research, In have problems understanding the law, Appellate counsel did not give any direction once direct appeal was done, In I been trying to find counsel, plus I been writing any one in the criminal justice address book never a response and it chain's of event's from the complaintant from visitation to emails.

Pet. ¶ 18. Williams raises additional grounds for equitable tolling in subsequent submissions to the Court. Dkt. Nos. 18, 25, 31. Liberally construed, the petition raises six potential grounds for equitable tolling of the limitations period: (1) Williams' difficulties understanding the law, (2) lack of direction from appellate counsel, (3) Williams' inability to find counsel to assist with the petition; (4) pandemic-related restrictions to the law library, *see* Dkt. No. 18 (stating that "[t]he department of correction throughout the state of new york ordered a shut down with a very limited [schedule] that was mostly cancelled" and Williams was "unable to attend the law library in five point-Attica correctional facility"); (5) intentional deprivation by his superintendent, *see* Dkt. No. 11 (stating that Williams was "blackballed from Law Library" when "the superintendent [saw] name on [his] paper work dealing with the court's"); and (6) Williams' health and safety at the Attica Correctional Facility, *see* Dkt. No. 25 ("[I'm] in here still fighting for my liberty, my life against covid-19 gang's and other's I've been [stabbed] in the neck and other [places]."); Dkt. No. 31 (stating that Williams was "being assaulted for talking up for myself" and experienced "racism gang's All kind of oppression tactics").

The first three grounds stated in Williams' petition do not constitute extraordinary grounds. It "has long been recognized that ignorance does not excuse lack of compliance with the law." *Velasquez v. United States*, 4 F. Supp.2d 331, 334–35 (S.D.N.Y. 1998); *see also Doe v. Menifee*, 391 F.3d 147, 175 (2d Cir. 2004) ("Pro se status does not in itself constitute an extraordinary circumstance meriting tolling."). A petitioner's lack of knowledge regarding their

10

legal rights is "probably the rule rather than exception among prisoners." *Lewis v. Walsh*, 2003 WL 21729840, at *2 (S.D.N.Y. July 25, 2003); *see also Adkins v. Warden*, 585 F. Supp. 2d 286, 297 (D. Conn. 2008) ("Most courts also recognize that lack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period.").

The lack of direction from Williams' appellate attorney also cannot constitute extraordinary circumstances justifying equitable tolling. The Supreme Court has stated that "equitable tolling is not warranted for 'a garden variety claim of excusable neglect.'" *Holland*, 560 U.S. at 633 (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 90 (1990)). There are "only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). Such extraordinary circumstances have been found when an attorney abandons an appeal mid-process, *Maples v. Thomas*, 565 U.S. 266 (2012); fails to file a timely petition for habeas relief despite numerous letters from the client discussing the deadline and applicable rules, *Holland*, 560 U.S. at 652; ignores the express instructions of the client and fails to conduct any legal research on the client's behalf, *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003); and "affirmatively and knowingly" promises a client to file a petition for habeas relief by a particular date and "[breaches] that promise," *Dillon*, 642 F.3d at 364 (2d Cir. 2011). Williams does not allege that his appellate attorney was representing him on his Section 2254 petition. The failure of that attorney thus cannot constitute an independent ground for equitable tolling. *See Smith v. Collins*, 2021 WL 3700194, at * [] (2d Cir. Aug. 20, 2021).

11

Williams' lack of success in finding counsel to assist him with his petition also does not constitute an extraordinary circumstance. "Problems such as insufficiency of legal assistance are not 'extraordinary' such that they warrant equitable tolling of the AEDPA limitation period." *Martinez v. Kuhlmann*, 2000 WL 622626 at *4 (S.D.N.Y. May 15, 2000); *see also Mighty v. USA*, 2021 WL 3036926, at *2 (W.D.N.Y. July 19, 2021) ("Mere ignorance of the law or a lack of access to legal assistants has repeatedly been found not to constitute extraordinary circumstances." (collecting cases)); *Hines*, 2021 WL 2456679, at *3 (limited access to legal assistance does not constitute an extraordinary circumstance); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (holding that claim that petitioner had limited education, was ignorant of the law and legal procedure, lacked funds to hire an attorney, had limited access to legal assistance that was available to prisoners, and was allowed limited use of the prison law library are not extraordinary circumstances that justified equitable tolling of the limitations period (citing cases)). Although counsel would have been of assistance in filing the petition, the lack of counsel is not a "severe . . . obstacle . . . for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d at 154.

Finally, "restricted access to library facilities does not merit equitable tolling" in this case. *Hines*, 2021 WL 2456679, at *3 (internal quotation marks omitted) (quoting *Cross v. McGinnis*, 2006 WL 1788955, at *6 (S.D.N.Y. June 28, 2006)); *see also Caraballo v. United States*, 2021 WL 1062036, at *3 (S.D.N.Y. Mar. 19, 2021) (same). Other of petitioner's allegations could constitute extraordinary circumstances in some cases. The Second Circuit has stated that "[t]he confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run." *Valverde*, 224 F.3d at 133; *see also*

*Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (indicating that the prison authority's discretionary deprivation of access to legal materials might warrant an equitable toll where such action prevented a prisoner from filing a petition for a writ of habeas corpus). The Second Circuit also has held that "hospitalization may demonstrate extraordinary circumstances, again, depending on the facts presented." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (finding that the petitioner's confinement during which he underwent six surgeries and was confined to bed and heavily medicated constituted an extraordinary event). In *Mighty*, 2021 WL 3036926, at *2, the court stated that it would be "inclined to find that the circumstances of Petitioner's injury and the lockdown (and other restrictions necessitated by the COVID-19 outbreak at FCI Elkton) are 'extraordinary' and sufficient to equitably toll the limitations period." In that case, Petitioner suffered a knee injury that caused him extreme pain and required him to remain on bed rest and limited his access to the law library and, as soon as he recovered from that injury, the prison suffered a "significant outbreak" of Covid 19 requiring rolling lockdowns for a period of fourteen months. *Id.* at *1–2.

Petitioner has not alleged, however, how any of these circumstances prevented him from filing his petition timely. *See Valverde*, 224 F.3d at 134; *Rodriguez v. Hudson Valley Chrysler*, 2021 WL 5910173, at *3 (S.D.N.Y. Dec. 14, 2021) (a petitioner must also " explain [how] any specific circumstances or restrictions . . . prevented him from filing his complaint"). Williams does not allege, as the petitioner did in *Valverde*, that a correctional officer confiscated his only copy of the habeas corpus petition shortly before the filing deadline. 224 F.3d at 133–34. Assuming, as the Court must at this stage, that for some period of time prior to the filing deadline the superintendent maliciously obstructed Williams' access to the law library, such facts do not

13

explain why Williams could not have mailed the petitioner he sent in December 2020 on a timely basis in September 2020.

Williams also does not allege how any health or safety related restrictions or issues prevented him from meeting the application's deadline, such as evidence that he "became ill" or evidence that "restrictions . . . made it impossible to complete the task of filing a complaint." *Hood v. Cath. Health Sys., Inc.*, 2020 WL 8371205, at *7 (W.D.N.Y. Sept. 28, 2020); *see also Bolarinwa v. Williams,* 593 F.3d 226, 232 (2d Cir. 2010) ("[I]n order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so."); *Ruiz v. Poole*, 566 F. Supp. 2d 336, 339 (S.D.N.Y. 2008) ("[E]ven accepting Petitioner's contention that he was prevented from accessing the law library during his incarceration in Attica, the Court finds that Petitioner has failed to demonstrate that his inability to access the law library in 2001 and 2002 constitutes 'extraordinary circumstances' preventing him from completing and filing his habeas corpus petition."). While Williams claims that he was stabbed numerous times and faced violence and retaliation, he does not allege the impediments of "hospitalization" and "confinement" that may give rise to a claim of equitable tolling.

Finally, "[w]hile the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances, '[a] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown." *Hines*, 2021 WL 2456679, at *2 (quoting *United States v. Aigbekaen*, 2021 WL 1816967, at *1 (D. Md. May 6, 2021)).

14

IV.     **Certificate of Appealability**

Respondent additionally requests that the Court decline to issue a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(1)(a). A petitioner is entitled to a Certificate of Appealability if he shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court is confident that Williams' claim is time-barred. Even if a reasonable jurist might conclude that some of Williams' circumstances could conceivably be characterized as extraordinary, it is not "debatable" that he failed to establish the causal link between such extraordinary circumstance and the untimeliness of the petition. Because "jurists of reason" would not find the resolution of the issue of timeliness presented here "debatable," the Court need not determine "whether the petition states a valid claim of the denial of a constitutional right." Thus, the Court will not issue a Certificate of Appealability.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 26 and to close the case.


SO ORDERED.

Dated: July 25, 2022
       New York, New York                           _____
                                                           LEWIS J. LIMAN
                                                     United States District Judge